IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Darlene Makins, ) | |
| ) | |
| ) | Civil Action No. 6:05-2615-HMH-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **REPORT OF MAGISTRATE** |
| ) | **JUDGE** |
| vs. ) | |
| ) | |
| Greenville Transit Authority and ) | |
| McDonald Transit Associates, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendant McDonald Transit Associates, Inc.'s ("MTA") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims against MTA for retaliation in violation of the South Carolina Constitution as well as race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended. She has also pled race based claims against MTA pursuant to 42 U.S.C. § 1981. Finally, she has brought state law claims for breach of contract and breach of contract accompanied by a fraudulent act.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

Greenville Transit Authority ("GTA") is a special purpose district, which provides public transportation in Greenville County, South Carolina. McDonald Transit Associates, Inc. ("MTA"), is a Texas company that contractually provides management and operations services to various transit systems, including GTA. The parties represent that GTA entered

into a management and operations contract with MTA whereby MTA would provide management services to GTA

As a result, MTA provided one of its employees, Judy Dudley, to act as a General Manager for GTA, beginning in April of 2003. (Dudley Aff. ¶ 2.) In that capacity, Dudley supervised employees of GTA. (Dudley Aff. ¶ 4.) The plaintiff was employed by GTA in its Administrative Maintenance Department and made purchases for the same. (Dudley Aff. ¶ 6.) The plaintiff's employment was terminated on February 16, 2004 for failure to follow GTA's rules and policies pertaining to purchases. (Dudley Aff. ¶ 10.)

### SUMMARY JUDGMENT STANDARD OF REVIEW

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**DISCUSSION**

I.   **TITLE VII CLAIMS**

MTA has requested that the Court dismiss the plaintiff's Title VII claims against it because MTA cannot be considered the plaintiff's "employer" under that statutory scheme. Only "employers" may be liable for racial discrimination against employees in the workplace under Title VII. 42 U.S.C. § 2000e-2(a). The term "employer" means a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).

MTA contends that GTA, and not MTA, is the plaintiff's only "employer" for purposes of liability under Title VII. The plaintiff, however, rightly responds that, in the proper context, "courts have held two employers jointly liable for a Title VII violation." *See Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 934 (D.S.C. 1997)*; see, e.g.*, *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir.1997); *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33, 46 (D.D.C.1997); *Magnuson v. Peak Tech. Servs., Inc.*, 808 F. Supp. 500, 507 (E.D. Va.1992), *aff'd*, 40 F.3d 1244 (4th Cir.1994); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F. Supp. 344, 349 (S.D.N.Y.1984). It appears that separate legal entities may bear liability for wrongful discrimination against the same employee under both a "joint employer" theory and an "integrated" or "single" employer theory. The Court will consider each in turn.

   **A.   Joint Employer Theory**

In *Williams v. Grimes Aerospace Co.*, the Honorable Henry M. Herlong, succinctly outlined the applicable analysis under the "joint employer" theory. *Williams*, 988 F. Supp. at 934-35. A defendant may be held liable under Title VII if it (1) fits within the "employer" definition of Title VII and (2) "'exercises substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment.'" *Id*. (quoting *Magnuson*, 808 F. Supp. at 507). Judge Herlong emphasized that in determining

3

"employer" status, "the court is guided by the 'broad, remedial purpose of Title VII which militates against the adoption of a rigid rule strictly limiting 'employer' status . . . to an individual's direct or single employer.'" *Id*. (quoting *Magnuson*, 808 F. Supp. at 508). Importantly, to be the plaintiff's employer, "each company must have exhibited the requisite control." *Id*. Although courts typically refer to two employing entities as "joint employers," the phrase is a misnomer. *Id*. at n.2. The inquiry is simply whether each defendant independently exercised the "requisite amount of control for Title VII liability to hold." *Id*.

*Williams* recognizes that the United States Court of Appeals for the Fourth Circuit applies a hybrid test to determine whether a defendant exercises sufficient control over an alleged employee to constitute an "employer" under federal law for purposes of Title VII. *See id.* (citing *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981-82 (4th Cir.1983). The *Garret* test, in addition to the "control exhibited by the putative employer, considers eleven additional factors to determine if an individual is an employee:"

> (1) the type of occupation; (2) the skill required for the occupation; (3) who furnished the equipment used at the place of work; (4) the length of time worked; (5) the method of payment; (6) how the relationship is terminated; (7) whether annual leave is available; (8) whether work is an integral part of employer's business; (9) whether the employer provides retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Williams*, 988 F. Supp. at 935. While "no one factor is determinative in ascertaining whether a defendant is an [employer] under Title VII," courts look to "all of the circumstances surrounding the work relationship . . . with the greatest emphasis placed on the extent of the employer's right to control the manner and the means of the worker's performance." *Id*. In Title VII cases, it appears that the Fourth Circuit recognizes three powers as most indicative of the control necessary to establish employer liability: "hiring, firing, and conditions of employment." *Id*. (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *aff'd in part*, 900 F.2d 27 (4th Cir.1990).

4

The Court finds that no genuine issue remains as to whether MTA was the plaintiff's employer; it was not. In its memorandum, MTA relies primarily on the affidavit of Judy Dudley as evidence that MTA has no ability to control the plaintiff's performance. Dudley swears (1) that she was never directed by MTA in regards to the plaintiff's performance; (2) that she consulted with GTA concerning her role as a General Manager; (3) that the plaintiff was employed and paid directly by GTA; and (4) that the decision to terminate the plaintiff was made within the course and scope of her position as GTA's general manager and was in no way directed by MTA. (Dudley Aff. ¶¶ 5, 6, 7, 11.)

Critically, GTA, itself, has admitted that the plaintiff is a GTA employee and *not* the employee of MTA. (Def.'s Ex. 2.) Although not dispositive of the issue, the Court finds GTA's representation a persuasive one. In response to a request to admit, GTA gave an unqualified admission that the plaintiff is not an employee of MTA. *See id*.

The plaintiff, however, emphasizes that Dudley, herself, is an MTA employee and was responsible for supervising and managing GTA employees, including the plaintiff, by the terms of the management and operations contract between the two companies. MTA admits as much. (Def.'s Mem. Supp. Summ. J. at 2.) The plaintiff, therefore, contends that MTA had the ability to control the performance of the plaintiff through its agent, Dudley.

The Court admits that this is a peculiar case and one that does not squarely parallel the factual circumstances traditionally at issue in joint employer cases. Typically, joint employer cases involve a plaintiff who is employed by a temporary staffing service but who has been placed with another company to perform specific substantive work. See, e.g., *Williams*, 988 F. Supp. at 935-356. In those cases, the normal employer responsibilities are divided between the two entities. One company might be responsible for payment of wages while the other might be responsible for the specific performance of the plaintiff. *See id*. Under the *Garrett* analysis it is reasonable, in light of the broad remedial purposes of Title VII, to treat both entities as the plaintiff's employer in such cases.

5

In this case, however, it is Dudley, not the plaintiff, who has been "outsourced" to GTA from MTA and who is seemingly the dual employee of both MTA and GTA. She is an employee of MTA but performs substantive work for GTA, at GTA's discretion. Dudley, however, is obviously not the plaintiff. Rather, she is the subject of the plaintiff's complaints of discrimination.

While Dudley might be considered the employee of MTA or GTA if she were the plaintiff, it does not seem reasonable under the *Garrett* and *Williams* analysis and in light of the evidence of record to consider the plaintiff to have been an employee of both entities. The Court has not found any case so holding. The plaintiff is essentially asking the Court to recharacterize MTA as *her* employer solely on the basis of the duality of *Dudley's* employment. The plaintiff urges this result notwithstanding the fact that all other indicia of her alleged employment with MTA are completely absent and Dudley manages the plaintiff at the sole direction of GTA. (*See* Dudley Aff. ¶¶ 2, 3, 5, 6, 11; Def.'s Ex. 2.)

The undisputed evidence demonstrates that MTA did not make decisions about the plaintiff's performance and that Dudley's actions were taken either in the scope of her employment with GTA, at GTA's express direction, or under its direct supervision. (*See* Dudley Aff. ¶¶ 2, 3, 5, 11; Def.'s Ex. 2.) Moreover, the plaintiff is paid by GTA and Dudley terminated her employment within the scope of Dudley's responsibilities as GTA's General Manager. (Dudley Aff. ¶¶ 6, 11; Def.'s Ex. 2.) The plaintiff has produced no evidence to the contrary, other than to highlight that Dudley is an MTA employee.

While "no one factor is determinative" the courts look to "all of the circumstances surrounding the work relationship . . . *with the greatest emphasis placed on the extent of the employer's right to control* the manner and the means of the worker's performance." *Williams*, 988 F. Supp. at 935 (emphasis added). The evidence indicates that any control exercised by Dudley over the plaintiff was with the authority, at the direction, and for the benefit of GTA, not MTA. The plaintiff has not proffered any evidence upon which a jury

6

could conclude to the contrary. In fact, the plaintiff does not even *allege* that MTA ever directed Dudley in the management of the plaintiff; retained the ability to hire or fire the plaintiff; paid the plaintiff; or participated in the decision to terminate her employment. Tellingly, the plaintiff has not argued, much less demonstrated with admissible evidence, that MTA engages in *any* activity concerning the plaintiff that would be consistent with an employee-employer relationship.

Accordingly, the plaintiff has failed to create a genuine issue as to whether MTA may be considered the plaintiff's employer under the "joint employer" theory.

### B.    Integrated Employer Theory

For essentially the same reasons as discussed above, MTA cannot be considered the plaintiff's employer under an "integrated employer" theory either. Under certain circumstances, two separate legal entities also may be exposed to liability for discrimination against the same employee where they are considered to be "integrated entities." *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir.1999) (FMLA). Under the "integrated employer" theory, "several companies may be considered so interrelated that they constitute a single employer." *Id*. (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir.1983) (Title VII)). This theory is typically used against companies who share either a parent-subsidiary or franchisor-franchisee relationship. *See, e.g., Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000); *see also* Barbar Lindemann and Paul Grossman, *Employment Discrimination Law*, Ch. 30 at 924 & n. 90 (Supp. 2002).

The plaintiff has produced no evidence that GTA and MTA are sufficiently intertwined in their operations at any level to justify the application of the integrated employer theory. In fact, the plaintiff essentially concedes that "GTA and MTA may not sufficiently be intertwined at the higher levels to qualify strictly as engaging in 'integrated enterprises.'" (Pl.'s Resp. Mot. Summ. J. at 5.) There is essentially no evidence of record as to the

7

contractual relationship which actually exists between these companies – certainly none that reflects substantial integration.

Instead, the plaintiff advances a kind of ostensible agency theory, arguing that MTA should be estopped from denying liability when its agent held herself out as a GTA employee, all the while working as an employee for MTA.  First, this argument does not in any way justify treating MTA and GTA as an integrated entity, under the applicable law.  Second, as the Court has noted, the plaintiff has produced no evidence that would suggest that Dudley cloaked herself in the authority of GTA while deceptively acting at the behest and secret instruction of MTA.  The only evidence before the Court indicates that GTA directed Dudley as to the management of the plaintiff.  (See Dudley Aff. ¶¶ 2, 3, 5, 11.)

Accordingly, the plaintiff has failed to create a genuine issue as to whether MTA may be considered the plaintiff's employer under the "integrated employer" theory.

The plaintiff's claims for discrimination and retaliation pursuant to Title VII, therefore, must fail.

### III.    Other Claims

The remainder of the plaintiff's claims pursuant to Section 1981 and the state law of South Carolina are expressly and exclusively premised on a belief that the plaintiff was an employee of MTA.  (Complaint ¶¶ 35, 38, 42, 44, 47, 54.)  As discussed above, the plaintiff has produced no evidence that the plaintiff was an employee of MTA or otherwise in any contractual relationship with the same.  Conversely, MTA has produced evidence that the plaintiff was exclusively an employee of GTA.  (*See* Dudley Aff. ¶¶ 5, 7-11; Def.'s Ex. 2.) Accordingly, the plaintiff's Section 1981 and state law claims must be dismissed as well, for no genuine issue of fact remains.

8

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendant McDonald Transit Associates, Inc.'s motion for summary judgment be GRANTED as to all claims.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>United States Magistrate Judge

April 11, 2006
Greenville, South Carolina